**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **CAROLINE STROUD,** | * |
| *Plaintiff,* | * |
| v. | * Case No.: RWT 11cv721 |
| **GREYSTAR MANAGEMENT SERVICES, LP,** | * |
| *Defendant.* | * |

## MEMORANDUM OPINION

On March 18, 2011, Plaintiff Caroline Stroud ("Stroud") filed suit against Defendants, Greystar Management Services, LP ("Greystar") and JPI Management Services, LP, ("JPI") alleging retaliation under the Family Medical leave Act ("FMLA").[1] *See* Compl., ECF No. 1. JPI was dismissed as a party because Stroud "failed to demonstrate that [JPI] took any actions as Plaintiff's employer that were in violation of the FMLA." ECF No. 18 at 5. On April 1, 2013, Greystar filed a Motion for Summary Judgment. ECF No. 30.[2] For the reasons stated below, its motion will be granted.

## Background

Stroud began work as a Resident Services Management employee for JPI on June 7, 2007. Compl. ¶ 4. On December 23, 2008, Stroud wrote a letter of complaint to JPI's Human Resource Department expressing her belief that co-worker Deyvis Reyes had been mistreated

---

[1] Although Stroud's Complaint cites both 29 U.S.C. § 2615(a)(1) and (2), her Complaint alleges that she was impermissibly retaliated against for opposing employment practices made unlawful under the FMLA. *See* Compl., ECF No. 1.
[2] Plaintiff filed an opposition memorandum on May 6, 2013, ECF No. 36, to which Greystar filed a reply on May 23, 2013, ECF No. 38.

through denial of a leave request and termination. ECF No. 1-1; Opp., ECF No. 36, Ex. 5. In the letter, she stated that Reyes had "asked the maintenance manager, Angel Rodriguez, and the community manager, Joi Ervin, if he could take time off (using his sick & vacation leave)," further stating that Reyes "wanted this time off (two weeks to be exact) to return to his country in order to get medical treatment for a preexisting condition." ECF No. 1-1. Stroud asserted that the company's denial of Reyes's request for leave was "[a] wrongdoing[] completely defy[ing] [JPI's] principles and creed." ECF No. 1-1. She also expressed a number of other human resources concerns to JPI, including allegations about the mistreatment of a groundskeeper and allegations about a worker who "comes to work visually intoxicated, and smelling like alcohol quite often." ECF No. 1-1. Stroud ended her letter saying, "[W]e all deserve to work in a workplace that's fair, safe, and respectable to all." ECF No. 1-1. Stroud explained in an affidavit that she wrote the letter "to make [JPI] aware of [her] concerns that fellow employees were . . . involved in activities that contradicted the company's creed." Stroud Aff. ¶ 14, ECF No. 36-4, Ex. 32.

In response, JPI's Human Resources Coordinator had a telephone conversation with Stroud on January 6, 2009, and wrote a letter to Stroud on January 7, 2009, stating that with respect to Reyes's leave request and termination, JPI "believes we have handled this situation consistently with all JPI policies and procedures, and applicable employment laws." ECF No. 1-4. The Human Resources Coordinator instructed Stroud to "redirect" any coworkers that come to her "with an associate relations issue . . . to their manager or Joi Ervin, Director of Community Operations as appropriate." ECF No. 1-4. Stroud was also directed to address any of her own "concerns regarding other associates" with her "manager, Joi Ervin or Human Resources as needed." ECF No. 1-4. That January, Greystar assumed management of the facility at which

Stroud worked, and Stroud's employment position and duties remained substantially the same. Vickory Aff. ¶¶ 3–5, ECF No. 30-3.

Two months after the January 7th letter from the Human Resources Coordinator, a warning was issued to Stroud on March 19, 2009, stating that "[Stroud] . . . [had] participate[d] in inappropriate conversations regarding employee related concerns." ECF No. 1-5. The warning explained that Stroud had divulged medical information of another employee, Amada Lucero, which was against company policy. ECF No. 1-5; Ervin Aff. ¶¶ 12–15, ECF No. 30-4. The report also referenced the January conversation between Stroud and human resources and reiterated the need for her to refer employee-related matters to management. ECF No. 1-5. On March 27, 2009, Stroud provided a written response to the March 19th warning report, which she described as "inaccurate and incomplete." ECF No. 1-6. With respect to the December 23, 2008 complaint letter regarding Reyes, Stroud asserted that she "was merely relaying information . . . about [her] concerns that fellow employees were witnessing, or involved in activities that contradicted the company's creed." ECF No. 1-6. Stroud "view[ed] [the March 19th] incident . . . as retaliation/harassment for [her] previous involvement in trying to get justice and equality for [her]self, as well as others on the team." ECF No. 1-6.

In September 2009, Stroud's supervisor's position (Operations Manager) became vacant. Pl.'s Dep. 57–58, ECF No. 30-2. Her co-worker, Celedo Kemngang, was selected for the position based on his long service with the company and the recommendation of the departing supervisor. Ervin Aff. ¶ 17. Stroud believed "because of the [March 19] warning[,] [she] was not eligible to apply for a promotion." Compl. ¶ 13. Stroud, however, did not ask anybody if she could be promoted, Pl.'s Dep. 78, and she did not submit an application for the position.

Ervin Aff. ¶ 17. Nevertheless, she believed her credentials to be superior to those of Kemngang. Pl.'s Dep. 78–79.

Over the following eight months, Stroud's relationship with Kemngang became "very strained." Ervin Aff. ¶ 18. On October 29, 2009, Stroud filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was subjected to retaliatory treatment for her actions in January and March of 2009.[3] ECF No. 38-4. Stroud and various members of the Greystar management team frequently disagreed over work assignments, new duties, and Stroud's willingness to cooperate. *See* Vickory Aff. ¶¶ 11–16; Ervin Aff. ¶¶ 17–27. On June 7, 2010, Greystar terminated Stroud's employment for refusal to recognize the authority of her supervisors. *See* Ervin Aff. ¶ 27–29; Compl. ¶ 4.

## **Standard of Review**

Summary judgment should be rendered if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To avoid summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. While the court must view the evidence in the light most favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302

---

[3] The EEOC referred the complaint to the Montgomery County Office of Human Rights, which determined on December 20, 2010, that no reasonable grounds existed upon which to find Greystar unlawfully discriminated against Stroud based on retaliation. ECF No. 38-4.

(4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

## **Discussion**

Stroud alleges a claim of retaliation for opposing practices made unlawful by the FMLA. Compl. ¶ 15. The opposition clause of section 2615(a)(2) of the FMLA makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Courts analyze FMLA claims under the familiar burden-shifting framework of claims under Title VII of the 1964 Civil Rights Act found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Title VII and FMLA claims are analogous. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).

To establish a prima facie claim of retaliation under the FMLA, a plaintiff must show that "[1] he [or she] engaged in protected activity, [2] that the employer took adverse action against him [or her], and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko*, 446 F.3d at 551 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). Because Stroud fails to establish the first and third elements of a prima facie case, her FMLA claim fails. Even if she had established a prima facie case, her employer offered a legitimate reason for terminating her, which she failed to rebut with evidence of pretext.

**I.   Protected Activity**

The gravamen of Stroud's Complaint is that her December 23, 2008 letter to JPI management complaining about the treatment of Reyes constituted "protected activity" under the first element of an FMLA claim. However, because Stroud's letter was generalized and only

5

asserted that the company's practices had defied company principles and creed, it does not constituted protected activity.

To satisfy the "protected activity" prong of a prima facie retaliation claim under § 2615(a)(2), "the [Plaintiff's] opposition activity [must] be directed towards conduct by the employer that is unlawful under the [FMLA]." *Felix v. Sun Microsystems, Inc.*, Civ. JFM-03-1304, 2004 WL 911303, *18 (D. Md. Apr. 12, 2004) (emphasis removed). Opposition activity may include "the use of informal grievance procedures as well as the staging of informal protests and voicing of one's opinions in order to bring attention to an employer's discriminatory behavior." *Id*. However, raising concerns of generally unfair practices does not constitute protected opposition activity under the FMLA. *Id.* at *19; *see also Sajadian v. Am. Red Cross*, 202 F.3d 260 (table), 1999 WL 1111455, *1 (4th Cir. Dec. 7, 1999) (holding that plaintiff "failed to make out a prima facie case of retaliation" under Title VII because "[a]lthough she raised general concerns about her workload, hours, and denial of leave, there is no evidence that either the [defendant or recipient of the complaints] was aware that her complaints were based on an allegation of discrimination.").[4]

Stroud's December 23, 2008 letter to JPI regarding the alleged mistreatment of co-worker Deyvis Reyes indicated her belief that the company's denial of his request for leave was "[a] wrongdoing[] completely defy[ing] [JPI's] principles and creed." ECF No. 1-1. The letter ends: "[W]e all deserve to work in a workplace that's fair, safe, and respectable to all." ECF No. 1-1. Nowhere in the letter does the plaintiff mention discrimination or illegal activity. Greystar did not understand Stroud's complaint about Reyes's treatment "to relate to the denial of leave under

---

[4] Courts in this Circuit addressing FMLA retaliation claims have "imported" Title VII analysis, *see Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 976 (E.D. Va. 2012), because "the Fourth Circuit has already demonstrated a desire to streamline its FMLA analysis with its standard Title VII analysis," *Payne v. Fairfax Cnty.*, 1:05CV1446, 2006 WL 3196545, *4 (E.D. Va. Nov. 1, 2006) (referencing *Cline,* 144 F.3d at 301).

the [FMLA]," Vickory Aff. ¶ 6, nor did JPI understand Reyes' request to be one for FMLA leave, Ervin Aff. ¶ 10. The January 7, 2009 letter from the Human Resources Coordinator to Stroud did not mention that Stroud had expressed concerns of discrimination or denial of rights under the FMLA. ECF No. 1-4. In addition, neither the March 19, 2009 warning report nor Stroud's March 27, 2009 response, both of which referenced the Reyes incident, mentioned discriminatory practices unlawful under the FMLA. ECF Nos. 1-5, 1-6. *Felix v. Sun Microsystems, Inc.* presents analogous facts to this case, and that court's analysis is helpful here. In *Felix*, the plaintiff in "almost all of [her] complaints [to defendant company's human resources department] . . . never mentioned . . . the FMLA, nor did she state that she believed [her husband's] termination to be unlawful. The day of [her husband's] termination, [plaintiff] called Human Resources to say [her husband's] discharge was 'wrong.'" *Felix*, 2004 WL 911303 at *19. When meeting with a human resources employee, the plaintiff "did not express why [her husband's] firing may have been unlawful." *Id*. The court found that the plaintiff's "complaints were so generalized that they must fail as a matter of law with respect to . . . the FMLA." *Id*.

Similar to the plaintiff in *Felix*, Stroud's communications with management concerning the treatment of Reyes invoked only general concerns of unfairness. Stroud failed to specifically allege discrimination or illegal denial of Reyes's FMLA rights, and because general complaints of unfairness do not rise to the level of protected activity, Stroud's actions do not constitute protected activity under the FMLA.[5] However, even if her actions did constitute protected

---

[5] Stroud also fails to show that her actions regarding the rights of Amada Lucero constitute protected activity. She offers no evidence of any letters of complaint or discussions with Greystar expressing her belief that Greystar's treatment of Lucero constituted discrimination or was illegal under the FMLA. Stroud was reprimanded in the March 19th warning letter for divulging Lucero's medical information, ECF No. 1-5, and though Stroud's March 27th response letter disputed the accuracy of the report's description of the circumstances giving rise to the warning, it did not relate concerns of discrimination or other practices unlawful under the FMLA, ECF No. 1-6.

7

activity, Stroud's FMLA claim fails because she does not show a causal connection between the expression of her concerns about Reyes's treatment and an adverse employment action.

## II. Adverse Employment Action

The second element Stroud must show to establish a prima facie FMLA claim is an adverse employment action. Her employment with Greystar was undisputedly terminated on June 7, 2010. Vickory Aff. ¶ 16. Neither party disputes that Stroud's termination constituted an adverse employment action within the meaning of the FMLA.[6]

## III. Causal Connection

To satisfy the third element of a prima facie retaliation claim, Stroud "must prove that she was terminated '*because* [she] engaged in protected activity.'" *Wright v. Southwest Airlines*, 319 F. App'x 232, 233–34 (4th Cir. 2009) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (interpreting Title VII)). In the absence of specific evidence showing causation, courts have inferred causation based on temporal proximity of the protected activity and adverse employment action. Nevertheless, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe,* 145 F.3d at 657; *see Scott v. Sebelius*, Civ. No. RWT 11–2865, 2013 WL 709765, *4 (D.

---

[6] The Complaint alleges discrimination based on Stroud's termination; however, there are passing references to the fact that she was not promoted in September 2009. Compl. ¶ 13. Stroud only mentions this failure to be promoted as a source of damages and never makes a failure to promote claim. Compl. ¶ 18. Even if she had properly pled a failure to promote claim, she has not produced sufficient evidence to support such a claim, and the evidence offered indicates that she never applied for the position in question.

Stroud's Opposition also asserts that "Defendant clearly retaliated against Plaintiff by reprimanding her" for the December 23, 2008 letter, and that "Defendant also retaliated against Plaintiff by requiring her to do things that her colleagues were not . . . required to do." ECF No. 36 at 1. Stroud, however, neither alleges in her Complaint nor offers evidence to show that the January 6, 2009 telephone conversation, the January 7, 2009 follow up report, or the March 19, 2009 associate warning report constituted adverse employment actions. Even if she had properly pled and supported such allegations, the case law indicates that such warning reports may not rise to the level of adverse employment action. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011) *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (holding that, under Title VII, a counseling letter that did not actually implement any discipline did not constitute an adverse employment action).

8

Md. Feb. 25, 2013) (finding that a year and a half is too long to infer causation); *Bryson v. Regis Corp.*, 498 F.3d 561, 570–71 (6th Cir. 2007) (holding that three months' temporal proximity was sufficient to infer causation); *Sisk v. Picture People, Inc.*, 669 F.3d 896, 901 (8th Cir. 2012) ("More than two months is too long to support a finding of causation without something more.").

Plaintiff was terminated on June 7, 2010, but she fails to provide any specific evidence showing that her termination resulted from raising concerns over Reyes's treatment. Even if her December 23, 2008 letter constituted protected activity, seventeen months passed from her December letter until her June 7, 2010 termination, and this does not present a sufficiently close temporal proximity from which to infer causation.

## IV.     Lack of Pretext

If a plaintiff establishes a prima facie case of retaliation under the FMLA, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *See Yashenko*, 446 F.3d at 551. This burden is one of production, not of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (discussing this burden in a Title VII context). If "[the employer] offers a non-discriminatory explanation for [the employee's] termination, [the employee] bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Yashenko*, 446 F.3d at 551 (quoting *Nichols*, 251 F.3d at 502) (internal quotation marks omitted); *see Khoury v. Meserve*, 268 F. Supp. 2d 600, 615 (D. Md. 2003) *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (noting in the context of a Title VII case that the "Plaintiff's task is to proffer evidence showing that Defendant's stated reason was not the real reason for its actions").

Greystar asserts that it decided to terminate plaintiff's employment "based on [Stroud's] continued and escalating insubordinate conduct toward her managers, and her unwillingness to

9

attempt to improve, even after repeated counseling." Ervin Aff. ¶ 29; *see* ECF No. 30-1. After Greystar produced this nondiscriminatory reason, the burden shifted to Stroud to show that this was mere pretext. Both parties offer ample evidence disputing the exact circumstances surrounding Stroud's termination, but Stroud offers no evidence other than her own belief that her ultimate termination was in retaliation for her complaints regarding denial of FMLA rights to a coworker seventeen months prior. Thus, she has failed to establish that Greystar's reason for her termination is mere pretext for FMLA discrimination.

## **Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment [ECF No. 30] will be granted. A separate Order follows.

Date: March 10, 2014

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE